

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | <u>**UNDER SEAL**</u> |
| v. | Case No. 3:25-cr- **44** |
| SHEILA C. BYNUM-COLEMAN, also known as "SHEILA C. COLEMAN," | 18 U.S.C. § 1349 Conspiracy to Commit Wire and Bank Fraud (Count One) |
| and | |
| RASHAD H. COLEMAN, | 18 U.S.C. §§ 1014 & 2 False Statements on Loan Applications (Counts Two through Ten) |
| *Defendants.* | |
| | 18 U.S.C. §§ 1957 & 2 Engaging in Monetary Transactions in Criminally Derived Property (Count Eleven) |
| | Forfeiture Allegation |

**<u>INDICTMENT</u>**
MARCH 2025 TERM - At Richmond

At all times relevant to this Indictment:

**<u>INTRODUCTORY ALLEGATIONS</u>**

1.      The defendants, SHEILA C. BYNUM-COLEMAN (also known as "SHEILA C. COLEMAN" and hereafter, "BYNUM-COLEMAN") and RASHAD H. COLEMAN (hereafter, "COLEMAN"), were a married couple residing in Chesterfield County, within the Eastern District of Virginia. BYNUM-COLEMAN was also a candidate for the Virginia House of Delegates.

2.      Atlantic Union Bank and Virginia National Bank were "financial institutions" for purposes of 18 U.S.C. §§ 20, 1014, 1344, and 1957.

1

3.      J.C. Bynum Construction LLC was a limited liability company formed in the Commonwealth of Virginia on or about October 13, 2010. From the company's inception through on or about September 30, 2020, BYNUM-COLEMAN was listed as the registered agent for the business; thereafter, from September 30, 2020 through October 30, 2023, COLEMAN was listed as the registered agent of the business. At all times, the registered address for the business was within the Eastern District of Virginia.

4.      Medina House of Fashion LLC was a limited liability company formed in the Commonwealth of Virginia on or about November 16, 2020 and cancelled on or about December 7, 2021. COLEMAN was listed as the registered agent for the business. At all times, the registered address for the business was within the Eastern District of Virginia.

5.      R.H. Coleman Enterprises LLC was a limited liability company formed in the Commonwealth of Virginia on or about February 20, 2015. On or about July 18, 2018, BYNUM-COLEMAN submitted a representation to the Chesterfield County Commissioner of Revenue, stating that the company's last day of business was December 31, 2017. The company's business licensure in Chesterfield County, Virginia thereafter ended on or about January 5, 2018. Thereafter, on or about May 31, 2018, the company was listed as inactive with the Virginia State Corporation Commission. On or about May 28, 2020, the defendants filed an application for reinstatement of the company with the Virginia State Corporation Commission. BYNUM-COLEMAN was listed as the registered agent for the business until on or about August 25, 2021; thereafter, COLEMAN was listed as the registered agent of the business. At all times, the registered address for the business was within the Eastern District of Virginia.

6.      Coleman REO Services LLC was a limited liability company formed in the Commonwealth of Virginia on or about October 25, 2017. On or about January 21, 2020,

2

BYNUM-COLEMAN submitted a representation to the Chesterfield County Commissioner of Revenue, stating that the company's last day of business was February 28, 2018. On or about January 18, 2022, the defendants cancelled the business with the Virginia State Corporation Commission. COLEMAN was listed with the Virginia State Corporation Commission as the registered agent for the business. At all times, the registered address for the business was within the Eastern District of Virginia.

7.    Coleman Property Management LLC was a limited liability company formed in the Commonwealth of Virginia on or about September 16, 2021, and cancelled on or about January 18, 2022. COLEMAN was listed as the registered agent for the business. At all times, the registered address for the business was within the Eastern District of Virginia.

8.    Moda Noir LLC was a limited liability company formed in the Commonwealth of Virginia on or about May 19, 2021, and cancelled on or about January 18, 2022. COLEMAN was listed as the registered agent for the business. At all times, the registered address for the business was within the Eastern District of Virginia.

### *Virginia Unemployment Insurance Program*

9.    Unemployment insurance ("UI") is a joint state-federal program intended to provide temporary financial assistance to certain unemployed workers.

10.    Following the emergence of the coronavirus pandemic ("COVID-19"), the United States Government took steps to slow the spread of the virus and to mitigate its impact on the public's health and economic wellbeing. On March 13, 2020, the President declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"). On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") became law.

3

11.     The CARES Act created the Pandemic Unemployment Assistance ("PUA") and the Federal Pandemic Unemployment Compensation ("FPUC") programs, which provided further benefits to certain unemployed claimants.

12.     As of April 18, 2020, the President declared that a major disaster existed in all States and territories under Section 401 of the Stafford Act. On August 8, 2020, to further offset the pandemic's impact on American workers, the President authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Fund for lost wage payments. The President authorized the FEMA Administrator to provide grants to participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA"), which provided further benefits to certain unemployed claimants.

13.     The PUA, FPUC, and LWA programs are administered by the various states, including the Commonwealth of Virginia, though the programs' benefits are funded in part by the federal government. The Commonwealth of Virginia managed unemployment insurance compensation programs (*i.e.,* individually, UI, PUA, FPUC, and LWA, and collectively, "UIC") through the Virginia Employment Commission ("VEC").

14.     To be eligible for Virginia UIC benefits, claimants must have had their hours reduced by their employer or been separated from employment altogether. Once the VEC approved a claim, the claimant needed to re-certify unemployment status on a weekly basis; then, the claimant could receive UIC funds disbursed weekly. Specifically, claimants needed to certify that they were ready, willing, and able to work each day during the weeks they claimed UIC benefits.

### *The Paycheck Protection Program*

15.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disaster.

16.     Another source of relief provided by the CARES Act in response to the COVID19 pandemic was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP").

17.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business.   To obtain a PPP loan, the applicant was required to acknowledge the program rules, make certain certifications under penalty of perjury, and provide certain supporting documentation as part of the loan application.

18.     A PPP loan application had to be processed by a participating financial lender or payment processor. If the PPP loan application was approved, the lender or payment processor funded the PPP loan using its own monies, and such loans were guaranteed by the SBA. Data from the application was transmitted by the financial lender or payment processor to the SBA while processing the loan.

19.     PPP loan proceeds could only be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The proceeds of a PPP loan were not permitted to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

## **COUNT ONE**
(Conspiracy to Commit Wire and Bank Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

20.     Paragraphs 1 through 19, including all subparagraphs, of this Indictment are realleged and incorporated as if set forth in full here.

21.     Beginning at least in or about February 2020, and continuing through at least on or about February 7, 2022, in the Eastern District of Virginia and elsewhere, the defendants, SHEILA C. BYNUM-COLEMAN (also known as "SHEILA C. COLEMAN") and RASHAD H. COLEMAN, did unlawfully and knowingly conspire with each other and others, known and unknown to the grand jury, to commit offenses contained within Chapter 63 of Title 18 of the United States Code, to wit:

a. *Bank Fraud* – to knowingly, and with intent to defraud, execute, and cause the execution of, a scheme and artifice to obtain monies and funds owned by, and under the custody and control of one or more financial institutions, as that term is defined at 18 U.S.C. § 20, including Atlantic Union Bank and Virginia National Bank, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, in violation of Title 18, United States Code, Section 1344(2); and

b. *Wire Fraud* – to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted in interstate commerce, by means of wire communication, certain writings, signs,

signals, pictures and sounds, for the purpose of executing the scheme and
artifice, and affecting a financial institution, in violation of Title 18,
United States Code, Section 1343.

### *Purpose of the Conspiracy*

22.     The purpose of this conspiracy was for BYNUM-COLEMAN and COLEMAN
(collectively, "the defendants") to unjustly enrich themselves by fraudulently obtaining COVID-
19-related governmental funding to which they were not entitled through filing false and
fraudulent claims for benefits and creating fictitious corporate entities. The purpose of the
conspiracy was also for the defendants to conceal wrongdoing from governmental authorities.

### *The Ways, Manner, and Means of the Conspiracy*

23.     The ways, manner, and means by which the defendants sought to accomplish the
conspiracy included, but were not limited to, the following:

A.  *Defendants File Fraudulent PPP Applications*

24.     It was part of the conspiracy that the defendants submitted false and misleading
PPP loan applications to financial institutions. On each of these applications, the defendants
made knowingly false statements and knowingly false certifications to mislead the financial
institutions, including, but not limited to, the following misrepresentations:

a.    Providing false and fabricated income, sales, gross receipts, and profit figures for
the businesses;

b.    Falsely certifying that the businesses were in operation as of February 15, 2020;
and

c.    Falsely certifying that the information submitted on the loan application and the
information provided in all supporting documents was true and accurate.

7

25.     At least nine fraudulent PPP loan applications submitted by the defendants were approved and funded, resulting in the disbursal of at least $225,000 in proceeds by the financial institutions.

26.     As an illustrative example, on or about May 12, 2020, the defendants filed a PPP loan application with Virginia National Bank in the name of J.C. Bynum Construction LLC, a business the defendants represented to be a construction business. As supporting documentation to substantiate the PPP loan application, the defendants prepared and submitted a falsified 2019 IRS Form 1040 Schedule C in the name of COLEMAN purporting to show that J.C. Bynum Construction LLC had $366,101 in gross income and $305,121 in net profit in 2019, attaching the fabricated Schedule C to the loan application. In truth, as the defendants well knew, the defendants never filed this 2019 IRS Form 1040 Schedule C with the IRS. In actuality, the defendants filed a separate 2019 IRS Form 1040 Schedule C with the IRS for J.C. Bynum Construction LLC, representing that the business received $236,101 in both gross income and gross profit; this legitimate 2019 IRS Form 1040 Schedule C further represented that the business incurred $237,133 in total expenses, resulting in an overall tentative loss in the business of $1,032. The defendants' false PPP loan application caused a $62,500 loan disbursement, on or about May 22, 2020, to an Atlantic Union Bank account ending in -1246, an account controlled by the defendants.

27.     As another illustrative example, on or about May 28, 2020, the defendants filed an application for reinstatement for "R.H. Coleman Enterprises LLC" with the Virginia State Corporation Commission. Thereafter, on or about February 22, 2021, the defendants filed a PPP loan application with Atlantic Union Bank in the name of "RH Coleman Enterprises LLC," which the defendants purported was a business engaged in real estate investment and consulting.

8

The application contained the false statements that the company had $100,000 in annual sales/revenue and had been in operation as of February 15, 2020. The defendants further represented that the applicant (or owner of the applicant business) was not an owner of any other business and did not have common management with any other business. As supporting documentation to substantiate the PPP loan application, BYNUM-COLEMAN and COLEMAN prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that RH Coleman Enterprises LLC received $104,274 in gross receipts and $104,274 in net profits. In truth and in fact, as the defendants well knew, the defendants never filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $20,835 loan disbursement, on or about March 22, 2021, to an Atlantic Union Bank account ending in -8743. BYNUM-COLEMAN and COLEMAN were the signatories on this bank account.

28.     As another illustrative example, on or about November 16, 2020, the defendants submitted articles of organization for a company named "Medina House of Fashion LLC" with the Commonwealth of Virginia's State Corporation Commission. Thereafter, on or about April 13, 2021, the defendants filed a PPP loan application with Atlantic Union Bank in the name of "Medina House of Fashion," which the defendants purported was a service business. The application contained a false statement that the company had $89,950 in annual sales/revenue and that the business had been in operation as of February 15, 2020. As supporting documentation to substantiate the PPP loan application, the defendants prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that Medina House of Fashion received $99,860 in gross receipts or sales. In truth and in fact, as the defendants well knew, the defendants never filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $18,740 loan disbursement, on or about May 14, 2021, to an Atlantic Union

9

Bank account ending in -6740. BYNUM-COLEMAN and COLEMAN were the signatories on this bank account. On or about January 18, 2022, the defendants filed articles of cancellation with the Virginia State Corporation Commission to close Medina House of Fashion LLC.

29.     As another illustrative example, on or about January 19, 2021, the defendants reserved the "Sheila Coleman – Realtor" corporate name with the Virginia State Corporation Commission (effective until May 19, 2021). Thereafter, on or about February 22, 2021, the defendants filed a PPP loan application with Atlantic Union Bank in the name of "Sheila Coleman – Realtor." The application contained a false statement that the company had $100,000 in annual sales/revenue and that the business had been in operation as of February 15, 2020. The defendants further represented that the applicant (or owner of the applicant business) was not an owner of any other business and did not have common management with any other business. As supporting documentation to substantiate the PPP loan application, the defendants prepared and submitted a falsified 2020 IRS Form 1040 purporting to show that BYNUM-COLEMAN had earned $120,200 in taxable income that year. Additionally, the defendants prepared and submitted a falsified 2019 IRS Form 1040 Schedule C purporting to show that BYNUM-COLEMAN's realtor business received $111,000 in gross receipts or sales in the 2019 tax year. In truth and in fact, as BYNUM-COLEMAN and COLEMAN well knew, both documents were forged and neither document was filed with the IRS. This false PPP loan application caused a $20,835 loan disbursement, on or about March 4, 2021, to an Atlantic Union Bank account ending in -7947. BYNUM-COLEMAN, COLEMAN, and their minor-aged child were the signatories on this bank account. The defendants never ultimately registered "Sheila Coleman – Realtor" with the Virginia State Corporation Commission as a corporate entity.

30.     As another illustrative example, on or about January 19, 2021, the defendants reserved the "Coleman Property Management" corporate name with the Virginia State Corporation Commission (effective until May 19, 2021). Thereafter, on or about March 16, 2021, the defendants filed a PPP loan application in the name of "Coleman Property Management," which the defendants purported was a business engaged in real estate management, with Atlantic Union Bank. The application contained a false statement that the company had $106,000 in annual sales/revenue and that the business had been in operation as of February 15, 2020. As supporting documentation to substantiate the PPP loan application, the defendants prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that Coleman Property Management received $152,315 in gross receipts and $40,529 in net profits. In truth and in fact, as the defendants well knew, the defendants never filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $20,832 loan disbursement, on or about March 29, 2021, to an Atlantic Union Bank account ending in -5943. BYNUM-COLEMAN and COLEMAN were the sole signatories on this bank account. The defendants filed articles of incorporation and articles of cancellation for Coleman Property Management LLC with the Virginia State Corporation Commission on September 16, 2021, and January 18, 2022, respectively.

31.     As another illustrative example, on or about January 19, 2021, the defendants reserved the "Moda Noir LLC" corporate name with the Virginia State Corporation Commission (effective until May 19, 2021). Thereafter, on or about April 27, 2021, the defendants filed a PPP loan application with Atlantic Union Bank in the name of "Moda Noir," which the defendants purported was a consulting and clothing business. The application contained a false statement that the company had $89,950 in annual sales/revenue and that the business had been in

11

operation as of February 15, 2020. As supporting documentation to substantiate the PPP loan application, the defendants prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that Moda Noir received $89,950 in gross receipts or sales. In truth and in fact, as the defendants well knew, the defendants never filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $18,737 loan disbursement, on or about May 6, 2021, to an Atlantic Union Bank account ending in -0849. BYNUM-COLEMAN and COLEMAN were the sole signatories on this bank account. The defendants filed articles of incorporation and articles of cancellation for Moda Noir with the Virginia State Corporation Commission on May 19, 2021, and January 18, 2022, respectively.

32.     As another illustrative example, on or about February 22, 2021, the defendants filed a PPP loan application with Atlantic Union Bank in the name of "Rashad Coleman-Handy Man Services," which defendants purported was a repair and maintenance company. The application contained a false statement that the company had $100,000 in annual sales/revenue and that the business had been in operation as of February 15, 2020. The defendants further represented that the applicant (or owner of the applicant business) was not an owner of any other business and did not have common management with any other business. As supporting documentation to substantiate the PPP loan application, the defendants prepared and submitted a falsified 2019 IRS Form 1040 Schedule C purporting to show that Rashad Coleman-Handy Man Services had $106,000 in net profit and $150,000 in gross receipts or sales. In truth and in fact, as the defendants well knew, the defendants never filed this 2019 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $21,250 loan disbursement, on or about March 18, 2021, to an Atlantic Union Bank account ending in -7947. BYNUM-COLEMAN, COLEMAN, and their minor-aged child were signatories on this bank account.

12

33.     As another illustrative example, on or about March 8, 2021, the defendants submitted an application to reinstate the existence of Coleman REO Services LLC with the Commonwealth of Virginia State Corporation Commission. Less than a month later, on or about April 4, 2021, the defendants filed a PPP loan application with Atlantic Union Bank in the name of "Coleman REO Services," which defendants purported was a business engaged in waste collection. The application contained a false statement that the company had $96,725 in annual sales/revenue and that the business had been in operation as of February 15, 2020. As supporting documentation to substantiate the PPP loan application, the defendants prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that Coleman REO Services received $96,725 in gross receipts or sales. In truth and in fact, as the defendants well knew, the defendants never filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $20,832 loan disbursement, on or about May 4, 2021, to an Atlantic Union Bank account ending in -9448. BYNUM-COLEMAN and COLEMAN were the sole signatories on this bank account. On or about January 18, 2022, the defendants filed articles of cancellation with the Virginia State Corporation Commission to close Coleman REO Services.

34.     As another illustrative example, on or about March 18, 2021, the defendants filed a second draw PPP loan application with Atlantic Union Bank in the name of J.C. Bynum Construction LLC. The application contained a false statement that the company had $153,420 in 2020 annual gross receipts. As supporting documentation to substantiate the PPP loan application, the defendants prepared and submitted a falsified 2020 IRS Form 1040 Schedule C in the name of COLEMAN purporting to show that J.C. Bynum Construction LLC had $153,420 in 2020 gross receipts or sales, attaching the fabricated Schedule C to the loan application. In truth, as the defendants well knew, the defendants never filed this 2020 IRS Form 1040 Schedule

13

C with the IRS. This false PPP loan application caused a $20,832 loan disbursement, on or about March 18, 2021, to an Atlantic Union Bank account ending in -5780.

B. *Defendants Submitted False Statements on Pandemic Unemployment Assistance Certifications*

35.    It was further part of the conspiracy that on or about March 29, 2020, BYNUM-COLEMAN filed for UI benefits with the VEC. On her UI application, BYNUM-COLEMAN represented, among other things, that she: (1) last worked on March 16, 2020 but was laid off; (2) was not currently working part-time for another employer; (3) had not established a business by forming an LLC or registering a business with the Virginia State Corporation Commission; and (4) that the information provided was true to the best of her knowledge.

36.    Thereafter, on or about April 20, 2020, BYNUM-COLEMAN filed an initial application for PUA benefits with the VEC. On the application, BYNUM-COLEMAN represented, among other things, that she: (1) was an unemployed worker; (2) had her place of employment closed because of COVID-19; and (3) all information given on the application was true and correct. Thereafter, BYNUM-COLEMAN filed multiple recertifications for continued eligibility for PUA, representing that she was eligible for unemployment benefits from on or about March 15, 2020 through on or about February 13, 2021. In each such recertification, BYNUM-COLEMAN certified that in the preceding week, she did not apply for or receive Paycheck Protection Program funds. As a result of such representations, BYNUM-COLEMAN received at least $17,562 in UIC funds. Such recertifications contained false representations because, as BYNUM-COLEMAN well knew, she had applied for and/or received PPP funds for certain weeks covered by the PUA recertifications:

a.    For instance, on or about May 17, 2020, BYNUM-COLEMAN filed a recertification for PUA benefits, certifying that in the week ending on May

14

16, 2020, she had not applied for PPP funds. Yet, on or about May 12, 2020, BYNUM-COLEMAN and COLEMAN had applied for PPP funds for J.C. Bynum Construction LLC.

b. As another illustrative instance, on or about June 29, 2020, BYNUM-COLEMAN filed a recertification for PUA benefits, certifying that in the week ending on June 27, 2020, she had not received PPP funds. Yet, on or about June 21, 2020, BYNUM-COLEMAN and COLEMAN had received PPP funds for J.C. Bynum Construction LLC.

37.     It was part of the conspiracy that on or about March 31, 2020, COLEMAN filed for UI benefits with the VEC. On his UI application, COLEMAN represented, among other things, that he: (1) was laid off from "JC Bynum Construction" and last worked on February 28, 2020; (2) was not working part time and was not employed with this employer; (3) was not a corporate officer or relative of a corporate officer; (4) was not receiving any income from any other source; and (5) that the information provided was true to the best of his knowledge.

38.     Thereafter, on or about April 21, 2020, COLEMAN filed an initial application for PUA benefits with the VEC. On the application, COLEMAN represented, among other things, that he: (1) was an unemployed worker; and (2) all information given on the application was true and correct. Thereafter, COLEMAN filed multiple recertifications for continued eligibility for PUA, representing that he was eligible for unemployment benefits from on or about March 15, 2020, through on or about June 13, 2020. In each such recertification, COLEMAN certified that in the preceding week, he did not apply for or receive Paycheck Protection Program funds. As a result of such representations, COLEMAN received at least $7,896 in UIC funds. Such recertifications contained false representations because, as COLEMAN well knew, he had

15

applied for and/or received PPP funds for the weeks covered by the UIC recertifications, including those set forth in Paragraphs 36(a) and 36(b) above. Additionally, on or about May 12, 2020, as part of filing the PPP application in the name of J.C. Bynum Construction, COLEMAN signed an attestation that he was the 100% owner and president of J.C. Bynum Construction LLC, the same company from which he was purportedly laid off according to his representations to the VEC. Additionally, on or about September 30, 2020, the defendants filed a change in registered agent for J.C. Bynum Construction LLC with the Virginia State Corporation Commission, changing the registered agent for the business from COLEMAN to BYNUM-COLEMAN.

C. *Defendants Spent Fraudulently Obtained PPP Funds on Personal Expenses*

39.     In furtherance of this conspiracy, BYNUM-COLEMAN and COLEMAN routinely spent fraudulently obtained PPP funds on: (1) paying down their own home loan; (2) luxury clothing; (3) paying down credit card bills in the name of BYNUM-COLEMAN only; (4) paying down credit card bills in the name of COLEMAN only; and (5) other personal spending.

40.     On or about May 29, 2020, roughly one week after the defendants received $62,500 in fraudulently obtained PPP loans for J.C. Bynum Construction LLC, BYNUM-COLEMAN transferred $10,000 of these fraudulently obtained PPP funds to an Atlantic Union Bank account ending in -3144 in the name of "Friends of Sheila for Delegate," an account for BYNUM-COLEMAN's political campaign for the Virginia House of Delegates.

### Wirings in Furtherance of the Conspiracy

41.     In furtherance of this conspiracy, BYNUM-COLEMAN and COLEMAN routinely caused wire transactions in interstate commerce between servers outside of Virginia

and servers within the Eastern District of Virginia.

(In violation of Title 18, United States Code, Section 1349.)

### COUNTS TWO THROUGH TEN
(False Statements on Loan Applications)

THE GRAND JURY FURTHER CHARGES THAT:

42.     The allegations contained in paragraphs 1 through 41 of this Indictment, including

subparagraphs, are realleged and incorporated as if fully set forth herein.

43.     On or about the dates indicated in the table below, in the Eastern District of

Virginia and elsewhere, the defendants SHEILA C. BYNUM-COLEMAN (also known as

"SHEILA C. COLEMAN") and RASHAD H. COLEMAN, for the purpose of influencing the

action of financial institutions, in connection with applications for PPP loans, knowingly made

false statements and reports, and aided and abetted each other and others, known and unknown to

the grand jury, in the same, as further described below:

| Count | On or About Date | Description of False Statements |
|---|---|---|
| | | *J.C. Bynum Construction* |
| 2 | May 12, 2020 | First Draw PPP loan application to Virginia National Bank for J.C. Bynum Construction LLC: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; and (2) transmitting a fabricated and false 2019 IRS Form 1040 Schedule C as supporting justification. |
| 3 | March 18, 2021 | Second Draw PPP loan application to Atlantic Union Bank for J.C. Bynum Construction LLC: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; (2) falsely representing that the company had $153,420 in 2020 annual gross receipts; and (3) transmitting a fabricated and false 2020 IRS Form 1040 Schedule C as supporting justification. |

17

| | | |
|---|---|---|
| | *Medina House of Fashion* | |
| 4 | April 13, 2021 | PPP loan application to Atlantic Union Bank for Medina House of Fashion: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; (2) falsely representing that the company had $89,950 in annual sales/revenue; (3) falsely representing that the company was in operation as of February 15, 2020; and (4) transmitting a fabricated and false 2020 IRS Form 1040 Schedule C as supporting justification. |
| | *Sheila Coleman- Realtor* | |
| 5 | February 22, 2021 | PPP loan application to Atlantic Union Bank for Sheila Coleman- Realtor: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; (2) falsely representing that the company had $100,000 in annual sales/revenue; (3) falsely representing that the company was in operation as of February 15, 2020; (4) transmitting a fabricated and false 2019 IRS Form 1040 Schedule C as supporting justification; and (5) transmitting a fabricated and false 2020 IRS Form 1040 as supporting justification. |
| | *Rashad Coleman-Handy Man Services* | |
| 6 | February 22, 2021 | PPP loan application to Atlantic Union Bank for Rashad Coleman-Handy Man Services: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; (2) falsely representing that the company had $100,000 in annual sales/revenue; (3) falsely representing that the company was in operation as of February 15, 2020; and (4) transmitting a fabricated and false 2019 IRS Form 1040 Schedule C as supporting justification. |
| | *RH Coleman Enterprises* | |
| 7 | February 22, 2021 | PPP loan application to Atlantic Union Bank for RH Coleman Enterprises LLC: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; (2) falsely representing that the company had $100,000 in annual sales/revenue; (3) falsely representing that the company was in operation as of February 15, 2020; and (4) transmitting a fabricated and false 2020 IRS Form 1040 Schedule C as supporting justification. |

18

| | | Coleman REO Services |
|---|---|---|
| 8 | March 8, 2021 | PPP loan application to Atlantic Union Bank for Coleman REO Services LLC: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; (2) falsely representing that the company had $96,725 in annual sales/revenue; (3) falsely representing that the company was in operation as of February 15, 2020; and (4) transmitting a fabricated and false 2020 IRS Form 1040 Schedule C as supporting justification. |
| | | Coleman Property Management |
| 9 | March 16, 2021 | PPP loan application to Atlantic Union Bank for Coleman Property Management: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; (2) falsely representing that the company had $106,000 in annual sales/revenue; (3) falsely representing that the company was in operation as of February 15, 2020; and (4) transmitting a fabricated and false 2020 IRS Form 1040 Schedule C as supporting justification. |
| | | Moda Noir |
| 10 | April 27, 2021 | PPP loan application to Atlantic Union Bank for Moda Noir LLC: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; (2) falsely representing that the company had $89,950 in annual sales/revenue; (3) falsely representing that the company was in operation as of February 15, 2020; and (4) transmitting a fabricated and false 2020 IRS Form 1040 Schedule C as supporting justification. |

(In violation of Title 18, United States Code, Sections 1014 and 2.)

## COUNT ELEVEN
(Engaging in Monetary Transactions in Criminally Derived Property)

44.    The allegations contained in paragraphs 1 through 41 of this Indictment are

realleged and incorporated as if fully set forth herein.

45.    On or about March 19, 2021, in the Eastern District of Virginia and elsewhere,

SHEILA C. BYNUM-COLEMAN (also known as "SHEILA C. COLEMAN") and RASHAD H.

COLEMAN, the defendants herein, did knowingly engage and attempt to engage, and aid and

abet each other in engaging, in a monetary transaction by, through and to a financial institution,

19

affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, money deposits which represented fraudulently obtained COVID-19-related PPP loan proceeds, such property having been derived from a specified unlawful activity, that is False Statements in Loan Applications (Count 6 of the Indictment), in violation of Title 18, United States Code, Sections 1014 and 2, respectively.

46.     *Property Derived from Specified Unlawful Activity (i.e., Count 6):*   As outlined in Paragraphs 32 and Count 6 above, on or about February 22, 2021, the defendants submitted false statements to Atlantic Union Bank on the PPP loan application for Rashad Coleman-Handy Man Services. On or about March 18, 2021, the defendants' false submittal caused Atlantic Union Bank to deposit $21,250 in fraudulently obtained government-backed loan proceeds to the defendants' Atlantic Union Bank account ending in -7947.

47.     *Criminal Monetary Transaction:* Thereafter, on or about March 19, 2021, the defendants initiated a $21,250 transfer from the Atlantic Union Bank account ending in -7947 to a separate Atlantic Union Bank account ending in -5441. BYNUM-COLEMAN, COLEMAN, and their minor aged son were all signatories to the Atlantic Union Bank account ending in -5441.

(In violation of Title 18, United States Code, Sections 1957 & 2.)

## FORFEITURE ALLEGATION

Pursuant to 32.2 of the Federal Rules of Criminal Procedure, the defendant is hereby notified that upon conviction of any of the offenses charged in Counts One through Ten of this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from any proceeds traceable to the offense.

20

The defendant is further notified that upon conviction of any of the offenses charged in Count Eleven of this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to the offense. If the property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461 and Title 21, United States Code, Section 853(p).)

A TRUE BILL:

_____    3/18/2025
FOREPERSON

ERIK S. SIEBERT
UNITED STATES ATTORNEY

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office

By: _____
    Avi Panth
    Thomas A. Garnett
    Assistant United States Attorneys

21