IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHEILA C. BYNUM-COLEMAN,<br>also known as "SHEILA C. COLEMAN,"<br><br>and<br><br>RASHAD H. COLEMAN,<br><br>        *Defendants*. | Case No. 3:25-cr-44-MHL |

**GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE
VICTIM BLAMING EVIDENCE, ARGUMENT, AND CROSS EXAMINATION**

    The United States of America, though undersigned counsel, respectfully moves this Court to exclude certain evidence, argument, and cross examination by the defendants designed to accuse the victim-lenders of negligence as it pertains to the Paycheck Protection Program ("PPP") loan process. Such evidence is not relevant to any allowable defense theory of the case, is untethered to any of the elements of the charges set forth in the Indictment, and is foreclosed by established precedent. Moreover, such evidence fails the Fed. R. Evid. 403 balancing test.

    **I.**     **Background**

    In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act to address the COVID-19 global pandemic, including the crisis facing American small business owners and their employees whose livelihoods were at stake. One source of relief that the CARES Act provided was the PPP, which provided forgivable loans to small businesses for payroll expenses for existing employees and certain other covered expenses. It was against this backdrop that defendants Sheila C. Bynum-Coleman (also known as Sheila C. Coleman) and

Rashad H. Coleman, a husband-wife couple, submitted fraudulent PPP loan applications to Atlantic Union Bank and Virginia National Bank, both Federal Deposit Insurance Corporation ("FDIC")-insured financial institutions as defined in 18 U.S.C. Sections 20, 1344(2), and 1014. Specifically, the defendants fraudulently obtained at least nine PPP loans from lenders on behalf of various corporate entities: J.C. Bynum Construction LLC, Medina House of Fashion, Sheila Coleman- Realtor, Rashad Coleman-Handy Man Services, RH Coleman Enterprises, Coleman REO Services, Coleman Property Management, and Moda Noir.

In each of the nine fraudulent PPP loan applications, the defendants submitted falsified and fabricated supporting documentation to support the loan amounts requested; the defendants simultaneously represented that the information transmitted (including the fraudulent supporting documentation) was true and accurate. The defendants' false statements on the PPP loan applications also included: (1) false representations of prior year annual sales, revenues, profits, and gross receipts for the subject companies; and (2) false representations in some cases that the subject companies were in operation as of February 15, 2020.

On March 18, 2025, a grand jury indicted both defendants, charging them with: (Count 1) Conspiracy to Commit Bank and Wire Fraud, in violation of 18 U.S.C. § 1349; (Counts 2-10) False Statements on Loan Applications, in violation of 18 U.S.C. §§ 1014 & 2; and (Count 11) Engaging in Monetary Transactions in Criminally Derived Property, in violation of 18 U.S.C. §§ 1957 & 2. *See generally* Indictment, ECF No. 3.

## II. The Court should exclude evidence, argument, and cross examination pertaining to alleged victim-lender negligence related to PPP loans.

The Court should exclude any evidence, argument, and cross examination designed to accuse or insinuate negligence on the part of the victim-lenders as it relates to the PPP loan program. Excluded topics should encompass: (1) any purported lack of due diligence by the

victim-lenders in approving PPP loans, including, *e.g.*, accusations that Small Business Administration loan guarantees drove negligent loan approvals; (2) the victim-lenders' sophistication (*i.e.*, that they should have known better than to approve the PPP loans at issue); and (3) the victim-lenders' actual or intended profits (or lack thereof) from PPP lending activity, including, *e.g.*, accusations or insinuations that the lenders' financial motives fueled lax lender PPP loan diligence. Because such evidence, argument, and cross examination are plainly irrelevant under the Federal Rules of Evidence 401 and 402, they are also inadmissible. Such evidence would further fail the balancing test of Federal Rules of Evidence 403 by misleading the jury as to the elements of the crimes at issue, unfairly prejudicing the jury, and confusing the issues.

    a. *Legal Standard*

Evidence is relevant if it "has a tendency to make a fact more or less probable than it would be without the evidence and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. The relevance of a particular piece of evidence must be evaluated in the context of the charged offenses. *See Spring/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387-88 (2008) ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.") (quoting Fed. R. Evid. 401 advisory committee's note).

The Fourth Circuit has held that evidence of a victim's alleged lack of due diligence and sophistication are not relevant to fraud charges. In *United States v. Colton*, the defendant was convicted of several counts of bank fraud after the Government presented evidence that he failed to disclose material information to the victimized financial institutions prior to obtaining loans to

finance commercial real estate projects. 231 F.3d 890, 894 (4th Cir. 2000). On appeal, the defendant argued that one of the lenders failed to request certain details prior to entering into the financing agreement. *Id.* at 903. The Fourth Circuit explicitly rejected this argument, explaining:

> The susceptibility of the victim of the fraud, in this case a financial institution, is irrelevant to the analysis: "If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts." *United States v. Brien,* 617 F.2d 299, 311 (1st Cir. 1980); *see also Neder,* 527 U.S. at 24-25, 119 S. Ct. 1827 (holding that "reliance" and "damages" are not necessary elements of an offense under the federal fraud statutes); *United States v. Stewart,* 872 F.2d 957, 960 (10th Cir. 1989) (same); [Stuart M.] Speiser et al., [9 *The American Law of Torts*] § 32.73 ("[T]he rule that fraud cannot be predicated on a failure to disclose facts where ... the truth may be ascertained by the exercise of reasonable diligence does not justify a resort to active deceit or fraud.").

*Id.*; *see also United States v. Raza*, 876 F.3d 604, 618 (4th Cir. 2017) (quoting *Colton* for the proposition that "the susceptibility of the victim of the fraud, in this case a financial institution, is irrelevant to the analysis"); *United States v. Gaver*, 815 F. App'x 700, 702-03 (4th Cir. 2020) (affirming district court's exclusion of evidence of "victims' alleged negligence, complicity, or actual knowledge of [the] fraudulent scheme" because "susceptibility of the victim is not a valid defense to bank fraud") (internal quotations and citations omitted).

Courts in other circuits have similarly found that victim blaming is not a cognizable or permissible defense to fraud. *See United States v. Lindsey*, 850 F.3d 1009, 1014-15 (9th Cir. 2017) (collecting cases and finding: "We join several of our sister circuits in holding that a victim's negligence is not a defense to wire fraud."); *United States v. Moore*, 923 F.2d 910, 917 (1st Cir. 1991) ("Appellant says that the court should not have instructed the jury that it is not a defense to claim that the bank might have prevented its losses had it had better 'internal controls or procedures.' We can find nothing wrong with this instruction. It is accurate."); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("[T]he negligence of the victim in failing to

discover a fraudulent scheme is not a defense to criminal conduct.") (citing *United States v. Kreimer,* 609 F.2d 126, 132 (5th Cir.1980); *United States v. Frenkel*, 682 F. App'x 20, 22 (2d Cir. 2017) ("The essential elements of the crime of wire fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme. A victim's negligence negates none of those elements.") (internal quotations and citations omitted); *United States v. Powell*, 509 F. App'x 958, 967 (11th Cir. 2013) (finding the district court did not abuse its discretion in granting a similar motion in limine and noting, "Whether the lenders in this case knew or should have known that the loan applications were fraudulent is of no consequence to this action. It has no bearing on the essential element of Powell's conduct, namely her intent to participate in the mortgage fraud scheme. . . Likewise, whether the lenders negligently created an environment of lax lending standards is irrelevant. Contributory negligence is not a defense to the crime of fraud."); *United States v. Palamarchuk*, 791 F. App'x 658, 660 (9th Cir. 2019) (approving exclusion of evidence related to "the conduct and motives of the victim lenders" because victim-lender negligence is not a valid fraud defense).

Similarly, whether a victim suffered damages has no bearing on a defendant's criminal liability for bank fraud. *See, e.g., Neder*, 527 U.S. at 24–25 (finding damages are not a necessary element of federal fraud statutes). Nor does whether the victim actually ended up profiting, or had a profit motive in engaging with the defendant. *See, e.g., Powell*, 509 F. App'x at 967 ("Whether the lenders were motivated by profit or did, in fact, profit from Powell's efforts is equally immaterial. . .").

5

Under Federal Rule of Evidence 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury, among other factors.

      b. *Victim blaming is not relevant under the charged money and property fraud statute or the false statement statute.*

All variants of defense arguments insinuating a PPP lender's negligence in approving a PPP loan (*e.g.*, accusations of a victim's purported failure to conduct proper diligence in approving a fraudulent PPP loan; claims that a victim's status as a sophisticated entity means that the victim should have known better than to approve a fraudulent PPP loan; or references to a victim's profits and potential profit motive in approving (what turned out to be) fraudulent PPP loans) are inadmissible under Federal Rules of Evidence 401 and 402 as well as established precedent.

These victim traits bear no relevance to any element of bank or wire fraud (and by extension, conspiracy to commit the same, as charged in Count 1 of the Indictment).[1] Except for the materiality and jurisdictional elements, all the other elements relate to the *defendants'* actions and mental state, not to those of the victims. As for the materiality element—*i.e.*, whether the

---

[1] The elements of the bank fraud statute (18 U.S.C. § 1344(2)) are: (i) that the defendant knowingly executed (or attempted to execute) a scheme or artifice to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody of, a financial institution, by false or fraudulent pretenses, representations, or promises; (ii) that the defendant did so with intent to defraud; (iii) the false or fraudulent pretenses, representations, or promises were material; (iv) the defendant acted with the intent to defraud; and (v) the financial institution was federally insured. Ruschky & Shealy, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, p. 264, 266 (2024 Online Edition).

The elements of the wire fraud statute (18 U.S.C. § 1343) are: (i) First, that the defendant devised or intended to devise a scheme to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises that were material; and (ii), that, for the purpose of executing the scheme, the defendant transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds. *Id.* p. 257.

defendant's statement had a natural tendency to influence, or was capable of influencing, the victim to part with money—the law imposes an objective and not a subjective test. *See United States v. Raza*, 876 F.3d 604, 621 (4th Cir. 2017) ("In fact, the correct test for materiality—as the district court recognized—is an objective one, which measures a misrepresentation's capacity to influence an objective 'reasonable lender,' not a renegade lender with a demonstrated habit of disregarding materially false information."); *Colton*, 231 F.3d at 903 n.5 ("It is important to bear in mind that the government must also prove . . . the materiality of the information concealed, *i.e.*, what a reasonable financial institution would want to know in negotiating a particular transaction."); *see also* Ruschky & Shealy, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, p. 266 (2024 Online Edition) ("A statement is material if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed. It is irrelevant whether the false statement actually influenced or affected the decision-making process of the fact finding body. A false statement's capacity to influence must be measured at the point in time that the statement was made. In other words, it concerns what a reasonable financial institution would want to know in negotiating a particular transaction.").

In other words, the specific actions, inactions, or motives of any individual victim-lender have no bearing on the materiality analysis, which is moored an objective standard of a "reasonable lender." Any specific victim-lender's "[i]ntentional disregard of relevant information is not a defense to wire fraud, and evidence of intentional disregard by lenders is not admissible as a defense to mortgage fraud." *Lindsey*, 850 F.3d at 1019.

Similarly, the purported sophistication of the victim, and whether such sophistication should have detected the fraud, is legally irrelevant. *Colton*, 231 F.3d at 903 ("If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the

schemers intended to defraud are gullible or skeptical, dull or bright."). Nor does the United States "have to prove actual reliance upon the defendant's misrepresentation" or damages. *Neder*, 527 U.S. at 25.

In this case, there is even less legal justification to introduce victim-blaming arguments in connection with the Indictment's false statement charges (Counts Two through Ten), because 18 U.S.C. § 1014 has no materiality requirement at all. *See United States v. Wells*, 519 U.S. 482 (1997), *abrogating United States v. Bonnette*, 663 F.2d 495 (4th Cir. 1981) (Materiality is not an element of 1014.).[2] Apart from the jurisdictional element, every element of these False Statement charges pertains to the defendants' actions, not the victim's. Section 1014, in short, is a crime of subjective intent (on the defendants' part), requiring neither reliance by the bank officers, *Bonnette*, 663 F.2d, 495, 498, nor an actual defrauding, *United States v. Kennedy*, 564 F.2d 1329, 1341 (9th Cir. 1977).

In sum, the charged statutes protect lenders regardless of their own purported negligence, lack of due diligence, sophistication, or even intentional disregard for the veracity of information submitted in a loan application. Accordingly, the Court should exclude any argument, evidence, and cross-examination designed to insinuate that the victim-lenders were negligent or otherwise operated with insufficient due diligence in the loan approval process. *See also United States v. Baver*, No. 2:21-CR-520-JNP-CMR, 2023 WL 4138319, at *4 (D. Utah June 22, 2023) ("The Government asserts—and the court agrees—that victim blaming is not a defense to fraud."). Relatedly, the Court should also exclude any argument, evidence, and cross-examination

---

[2] The elements of 18 U.S.C. Section 1014 are: (i) that the defendant made a false statement . . .; (ii) to a financial institution covered by the statute; (iii) that the defendant did so for the purpose of influencing in any way the actions of the financial institution; and (iv) that the defendant did so knowingly . . . Ruschky & Shealy, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, p. 211 (2024 Online Edition).

advanced for the purpose of showing that the victim-lenders were sophisticated entities that should have known better than to approve the loan applications submitted by the defendants. Such argument, evidence, and cross-examination have no relevance as to any legitimate and legally cognizable defense theory of the case. Lastly, the Court should exclude evidence or argument intended to highlight any profit enjoyed by the victim-lenders, or to insinuate that the lenders' profit motive prompted or occasioned either negligence or a lack of due diligence on the lenders' part in reviewing and/or approving the defendants' loan applications.

    c. *Victim blaming would cause unfair prejudice, confuse the issues, and mislead the jury.*

The aforementioned victim negligence arguments equally fail Rule 403's balancing test. Even were the Court to find that such arguments bear some relevance on the criminal charges the defendants confront—which they do not—any probative value would be minimal at best. The fundamental factual issue for the jury to decide concerning the charges in this case is whether the *defendants* made knowingly false statements to lenders to obtain PPP funds. Evidence of victim negligence, sophistication, and motive invites the jury to excuse the defendants' fraud and blame the lenders for failing to detect the defendants' deliberate wrongdoing. Evidence of lender profits and profit motive could similarly and inappropriately shift the jury's focus from the defendants' fraudulent actions to whether the lenders they defrauded had hoped, in the course of their review and approval of the defendants' loan applications, to draw a profit on lender fees. Such evidence has no bearing on the relevant legal questions confronting the jury, and the defendants' introduction of such evidence would inevitably (and impermissibly) sound in jury nullification.

Accordingly, any probative value of such evidence would be negligible and would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury as to the proper elements of the charged crimes.

## III. Conclusion

The United States respectfully requests that this Court grant the motion.

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By:       /s/
Avi Panth
Virginia Bar No. 92450
Thomas A. Garnett
Virginia Bar No. 86054
Assistant United States Attorneys
United States Attorney's Office
919 East Main St., Suite 1900
Richmond, VA 23219
Phone: (804) 819-5400
Fax: (804) 819-7417
Email: Avishek.Panth@usdoj.gov