IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:25-cr-44-MHL |
| | ) | |
| v. | ) | |
| | ) | |
| SHELIA C. BYNUM-COLEMAN | ) | |
| | ) | |
| RASHAD H. COLEMAN | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' JOINT RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE VICTIM-BLAMING EVIDENCE, ARGUMENT AND CROSS-EXAMINATION**

Defendants Shelia C. Bynum-Coleman and Rashad C. Coleman (collectively, "the Colemans") offer the following response to the government's Motion *in Limine* to Exclude Victim Blaming Evidence, Argument, and Cross Examination (ECF No. 24) (MIL):

## I. Introduction

The indictment (ECF No. 3) in this matter charges the Colemans with Conspiracy to Commit Bank and Wire Fraud, in violation of 18 U.S.C. § 1349 (Count 1), nine counts of Making False Statements in Loan Applications, in violation of 18 U.S.C. § 1014 (Counts 2-10), and Engaging in Monetary Transactions with Criminally Derived Property, in violation of 18 U.S.C. § 1957 (Count 11). In its motion, the government seeks exclusion of

> evidence, argument, and cross examination designed to accuse or insinuate negligence on the part of the victim-lenders as it relates to the PPP loan program. Excluded topics should encompass: (1) any purported lack of due diligence by the victim-lenders in approving PPP loans, including, *e.g.*, accusations that Small Business Administration [SBA] loan guarantees drove negligent loan approvals; (2) the victim-lenders' sophistication (*i.e.*, that they should have known better than to approve the PPP loans at issue); and (3) the victim-lenders' actual or

> intended profits (or lack thereof) from PPP lending activity, including, *e.g.*, accusations or insinuations that the lenders' financial motives fueled lax lender PPP loan diligence.

MIL at 2-3. As support for its motion, the government contends that evidence of that nature is irrelevant and would only serve to mislead and unfairly prejudice the jury, Fed. R. Evid. 401-403, and that arguments in that vein relying on such evidence would be improper. MIL at 3-5.

The Colemans agree that it would be improper to argue that banks were to blame for fraud charged in the indictment via lack of due diligence or their relative sophistication and they intend to offer no such argument. Accordingly, they have no objection to entry of an order barring them from offering such arguments. However, for the reasons stated below, the Court should deny the motion, or at a minimum, defer a ruling on the admission of any evidence that might touch on these topics but is otherwise relevant under Federal Rule of Evidence 401.

## II. Legal Analysis

### A. A motion *in limine* is an improper vehicle through which to litigate this issue.

Motions *in limine* are tools district courts use to rule on evidentiary issues before trial under their inherent management authority. *See Luce v. United States,* 469 U.S. 38, 41 n.4 (1984). A motion to exclude evidence "should be granted only when the evidence is **clearly inadmissible on all potential grounds**." *United States v. Verges*, 2014 WL 559573 at *3 (E.D. Va.) (emphasis added). This is because "'a court is almost always better situated during the actual trial to assess the value and utility of evidence.'" *Id.* (quoting *Silicon Knights, Inc. v. Epic Games, Inc.,* 2011 WL 5439156, at *1 (E.D.N.C. Nov. 8, 2011)); *see also Luce,* 469 U.S. at 41 ("A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context."). Accordingly, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of

evidence when they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). And a court may revisit an *in limine* ruling at trial in the event of changed factual circumstances or simply as an exercise of judicial discretion. *Luce,* 469 U.S. at 41.

In its motion, the government does not offer any specific evidence that it contends is "victim-blaming," leaving the Colemans to guess at what that evidence might be or the context in which that evidence might be offered. And the government does not identify any evidence that is clearly inadmissible on any ground at all. For that reason alone, the Court should defer ruling on the admissibility of any specific evidence or testimony until trial.

### B. Evidence relating to the Colemans' good faith, lack of intent to defraud, and other issues might suggest negligence or lack of due diligence on the part of the banks or the PPP loan program even if not offered for that purpose.

As to Count One, the government will have to prove beyond a reasonable doubt that the Colemans acted with the intent to defraud, meaning "a specific intent to deceive or cheat, ordinarily, for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self." Ruschky & Shealy, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina,* 259 (2024 Online Edition); *United States v. Ellis*, 326 F.3d 550, 556 (4th Cir. 2003). As to Counts 2-10, the government will have to prove beyond a reasonable doubt that the Coleman's knew the statements at issue in each count were false and that they made them for the purpose of influencing the banks in question. Ruschky & Shealy, *Pattern Jury Instructions* at 211; *Elliott v. United States*, 332 F.3d 753, 759 (4th Cir. 2003). Thus, the government will be required to negate the inference that Colemans acted with the good faith belief in the truth of the statements at issue in Counts 1-10. *See, e.g.* Ruschky & Shealy, *Pattern Jury Instructions* at 260 ("Good faith on the part of the defendant is not consistent with an intent to defraud").

Although the Colemans' pre-trial investigation of this matter is far from complete, evidence of the Colemans' good faith could come from multiple sources, including government witnesses and evidence or witnesses called by the defense. In particular, the Colemans' interactions with bank employees or others, reliance upon information provided by the government or banks, or observations about a pattern of activity from the banks might support an inference of good faith. However, such evidence might also necessarily suggest negligence or a lack of due diligence on part of the banks. Numerous district courts have faced this very dilemma in a variety of fraud cases and have generally resolved the issue—at least tentatively—in favor of admitting evidence of good faith. *See, e.g., United States v. Prather*, 2023 WL 4564765 at *2 (S.D. Ohio 2023) (in fraud case, "[d]efendant may cite to behavior by the bank and its employees in presenting a good faith defense"); *United States v. Agee*, 2021 WL 2894784 at *3 (S.D. Ind. 2021) (in wire fraud and conspiracy case, defendants who are not "[simply] blaming the victim for being duped" may "present evidence [at trial] that will go to the issues of their state of mind, intent, and the materiality of allegedly omitted facts").

Furthermore, the government may at trial open the door to admission of evidence on the practices of the banks or the Small Business Administration that is relevant to the Colemans' state of mind. That evidence should be admissible even if it reflects poorly on the practices of those institutions. *See, e.g., United States v. McHatton*, 2021 WL 4950352 at *2 (D. Ariz. 2021) (if government introduced evidence that "victim-investors were infirm, elderly, vulnerable, church-going, or gullible, such evidence may open the door to cross-examination concerning the victims' investment experience and sophistication"); *United States v. Coscia*, 2015 WL 6153602 at *2 (N.D. Ill. 2015) (allowing cross-examination of victims on whether they were "mislead or defrauded" or whether they "got the benefit of their bargains."); *see also United States v. Yang*,

2019 WL 5536213 at *3 (N.D. Cal. 2019) (in case involving, *inter alia*, mail fraud, aggravated identity theft, and conspiracy, "a victim's knowledge of the fraud could constitute relevant impeachment evidence. If, for instance, the Government elicits testimony from a witness that he or she had in fact been deceived by the false statements, such testimony could open the door to evidence that the witness was aware the statements were false.").

It is at this point impossible to know what evidence the government considers "victim-blaming" and whether that evidence is relevant to other issues, such as a good faith defense. The court has insufficient "factual context" to rule on such "subtle evidentiary questions." *Luce,* 469 U.S. at 41.

### C. Evidence relating to the issue of materiality might suggest negligence or lack of due diligence on the part of the banks or the PPP loan program even if not offered for that purpose.

As to Count One, the government must prove beyond a reasonable doubt that the alleged false statements made in furtherance of the alleged fraud scheme and conspiracy were "material," in that it would have a natural tendency to influence the entity at which it was directed to part with money or property. *United States v. Sarihifard*, 155 F.3d 301, 307 (4th Cir. 1998); *see also* Ruschky & Shealy, *Pattern Jury Instructions* at 260. Although the government correctly notes that the test for materiality is objective, MIL at 6-7 (*citing United States v. Raza*, 876 F.3d 604, 621 (4th Cir. 2017)), application of that objective test is nonetheless informed by the conduct of the entities with which the Colemans were dealing. *See, e.g., Yang*, 2019 WL 5536213 at *2 ("courts have said that how a particular decisionmaker would have reacted to particular statements is relevant to whether those statements were material.") (citations omitted). Thus, evidence of that conduct is relevant to the issue of materiality even if it coincidentally suggests lack of due diligence or negligence. The district court in *Agee* recognized as much when

it found that to present a "meaningful defense," a defendant in a fraud case involving SBA loans should be permitted to establish that:

> the SBA did not communicate policies and guidelines to its loan specialists, who in turn made inconsistent decisions that guided the Defendants' conduct. The Defendants sought and obtained advice from SBA personnel on how to get loans approved in complex situations. And the alleged material omissions of fact were facts to which the SBA had easy access but did nothing to discover or verify. When a loan defaulted, the SBA quickly compromised its loss with the banks who funded the loans in question rather than seek insurance proceeds to cover the full amount of the guarantee.

*Agee*, 2021 WL 2894784 at *3. That court thus permitted introduction of evidence that necessarily suggested negligence on the part of the SBA. To the extent that the Colemans offer similar evidence for the purpose of arguing that the statements at issue were not material, this Court should allow them to do so.

### III. Conclusion

For these reasons, the Colemans respectfully request that the Court deny the government's motion *in limine* at this time, or defer ruling on the motion, except to the extent that the government seeks an order barring explicit "victim-blaming" arguments.

Respectfully submitted,

| SHELIA C. BYNUM-COLEMAN | RASHAD H. COLEMAN |
|---|---|
| By: /s/ | By: /s/ |
| S. Sadiq Gill | Michael C. Moore |
| Virginia Bar Number 30835 | Virginia Bar Number 34229 |
| Durrette, Arkema, Gerson & Gill, PC | Of Counsel |
| 1111 E. Main Street, 16th Floor | William J. Dinkin, PLC |
| Richmond, Virginia 23219 | 101 Shockoe Slip, Suite I |
| Phone: (804) 775-6900 | Richmond, Virginia 23219 |
| Fax: (804) 775-6911 | Phone: (804) 658-5384 |
| Email: sgill@dagglaw.com | Fax: (804) 207-4368 |
| | Email: mike.moore@dinkinlaw.com |