IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHEILA C. BYNUM-COLEMAN,<br>also known as "SHEILA C. COLEMAN,"<br><br>*Defendant*. | Case No. 3:25-cr-44-MHL |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENSE
<u>MOTION TO EXCLUDE EVIDENCE</u>**

The United States of America, by and through undersigned counsel, respectfully files this response in opposition to defendant Shelia C. Bynum-Coleman's motion to exclude "any and all evidence, testimony, argument, or reference" to the fact of the defendant's transfer of fraudulently-obtained federal pandemic business relief funds from the recipient business's bank account to the bank account of her political campaign committee. *See* Dk. No. 60. The defendant contends that such evidence is inadmissible because it is irrelevant and because its admission would unfairly prejudice the jury against the defendant. The evidence the defendant seeks to preclude from the jury's consideration constitutes direct evidence of the defendant's guilt on multiple counts of the Superseding Indictment, and as such, it is transparently relevant; likewise, the fact that this highly probative evidence is—like all incriminatory evidence—prejudicial to the defendant's case does not render that evidence unfairly prejudicial. The Court should accordingly deny the defendant's motion.

**<u>Background</u>**

The defendants are charged in a 13-count Superseding Indictment (Dk. No. 40, or "S.I.") that first alleges (in Count One) the defendants' execution of a wire and bank fraud conspiracy

conducted for the purposes of (*inter alia*) "unjustly enrich[ing]" themselves by fraudulently obtaining both governmental funding intended for the relief of certain specified business entities during the pandemic and pandemic unemployment assistance funds. The Superseding Indictment also alleges that the defendants' actions in furtherance of the conspiracy included their dissipation of those fraudulently obtained business relief funds (*i.e.,* COVID-19-related Paycheck Protection Program or "PPP" funds) on purposes transparently unrelated to the business entities, violating the defendants' own certifications that such funds would only be used for specific authorized purposes (*i.e.,* payroll, rent, mortgage interest, and utilities) and that the information represented on the loan applications was true and accurate. The Superseding Indictment further charged as standalone counts (Counts Two through Ten) the defendants' false statements on loan applications relating to their fraudulent solicitation (and successful receipt) of PPP loans on behalf of numerous of their purported business entities. Count Eleven is a money laundering count related to the transfer of fraud proceeds, and Counts Twelve and Thirteen relate to each defendant's failure to file 2020 income tax returns.

Relevant to this pleading, as detailed in Counts One and Two of the Superseding Indictment, on or about May 12, 2020, the defendants filed a fraudulent PPP application in the name of one of their businesses, J.C. Bynum Construction LLC, with Virginia National Bank. On the PPP application, the defendants certified, among other things, that the requested PPP funds would only be used for business-related purposes as specified in the loan application:

- I will comply, whichever applicable, with the ~~~~~~~~
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

*Figure 1*: PPP Loan Application Excerpt – J.C. Bynum Construction LLC

Additionally, next to each of the following certifications, the defendants marked "Yes," further affirming their knowledge and acquiescence of the authorized uses for PPP funds:



*Figure 2*: PPP Loan Application Excerpt – J.C. Bynum Construction LLC

Lastly, in the same application, the defendants further certified that all the information they submitted in the loan application (including their representations about the permissible uses of obtained PPP funds) was true and correct:



*Figure 3*: PPP Loan Application Excerpt – J.C. Bynum Construction LLC

The Superseding Indictment explicitly charges the defendants' false certification that the "information submitted on the loan application (including supporting documents) was true and accurate." *See* S.I. at Count 2. As discussed in further detail below, the United States will establish that this representation is false because the defendants did not use PPP loan proceeds only for specified permissible expenses for J.C. Bynum Construction LLC (*i.e.,* payroll, rent, mortgage interest, and utilities), contrary to their representations.

The defendants' submittal of this fraudulent PPP application caused a $62,500 PPP loan disbursement to be made to J.C. Bynum Construction LLC's Atlantic Union Bank account ending in -1246, an account controlled by both defendants, on or about May 22, 2020. S.I. ¶ 26. Just one week after receiving these fraud proceeds, defendant Bynum-Coleman initiated a $10,000 transfer of the fraud proceeds to a separate Atlantic Union Bank account ending in -3144 in the name of "Friends of Sheila for Delegate," an account for Bynum-Coleman's political campaign. S.I. ¶ 40.

Thereafter, on or about January 25, 2021, the defendants filed an application for loan forgiveness. In this application, the defendants certified, in relevant part, that the borrowers had

"complied with all requirements in the Paycheck Protection Program Rules. . . including the rules related to. . . eligible uses of PPP loan proceeds."

## Argument

### A. The Challenged Evidence is Relevant

Federal Rule of Evidence 401 defines "relevant" evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Old Chief v. United States*, 519 U.S. 172, 178 (1997) (quoting Fed. R. Evid. 401). It is a "general proposition" of admissibility, then, that "*any* evidence which tends to make the existence of a fact of consequence to an issue in the case 'more probable or less probable' than without the evidence is relevant and therefore, as a general proposition, admissible." *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (quoting Fed. R. Evid. 401, 402) (emphasis added).

The evidence the defendant seeks to preclude the jury from hearing in this case—that defendant Bynum-Coleman transferred PPP funds from the J.C. Bynum Construction LLC bank account to a bank account maintained for a purpose transparently and wholly unrelated to the business' activity—is directly and clearly relevant to numerous aspects of the United States' case-in-chief. The nature of defendant Bynum-Coleman's transfer of those funds is a "fact of consequence" to establishing (1) one of the explicitly alleged *purposes* of the bank and wire fraud conspiracy charged in Count One of the Superseding Indictment; (2) the falsity of the defendants' representations on the PPP loan application at issue, as explicitly alleged in Count Two; and (3) the direct and consequential role that defendant Bynum-Coleman executed in furtherance of the defendants' fraud scheme.

4

### 1. The Evidence is Relevant to Establishing One of the Purposes of the Bank and Wire Fraud Conspiracy Charged in Count One

Count One of the Superseding Indictment explicitly alleges that a purpose of the defendants' bank and wire fraud conspiracy was for the defendants to unjustly enrich themselves with the PPP and unemployment assistance funds they fraudulently obtained. S.I. ¶ 22. The United States bears the burden of proof, and concomitantly, is entitled to put on evidence demonstrative of the full picture of that unjust enrichment—that is, establishing the fraudulent nature of both the defendants' *receipt* of those government relief funds (by way of fraudulent loan and unemployment assistance applications), and the defendants' *dissipation* of those relief funds (spending the relief funds for personal expenses that were transparently self-serving and unrelated to the purposes for which those funds were issued).

*First*, defendant Shelia Bynum-Coleman's transfer of $10,000 of PPP relief funds from a business bank account to her political campaign's bank account—a week after her receipt of those relief funds—is evidence of the fraudulent nature of the defendants' loan applications (both generally, and for this specific tranche of PPP funds), which required the defendants to agree, *inter alia*, that they would utilize those sought-after PPP funds only for narrowly defined permissible purposes. *See* S.I. ¶¶ 17, 19 (discussing payroll, rent, mortgage interest, and utilities as authorized purposes). The defendant's actions in rapidly applying those PPP funds to instead fund her political campaign is (at the very least) circumstantial evidence of the defendant's mental state and her knowledge of the falsity of the defendant's loan application certifications—dishonesty which is explicitly alleged as part of the "ways, manner, and means" by which the defendants carried out their conspiracy to defraud the United States (*see id.* ¶ 24).

*Second*, Bynum-Coleman's transfer of PPP relief funds from a business bank account to her political campaign's bank account is a crystalline (and expressly alleged, *see id.* ¶¶ 39-40)

example of the defendant's improper use of those PPP business relief funds. This evidence is all the more compelling (and thus, relevant) precisely because of the *nature* of the bank account that Bynum-Coleman routed those government loan funds to: Bynum-Coleman's PAC bank account was that of a political campaign. It was *not* that of a business entity; nor was it one of the defendants' personal checking or savings accounts. In short, the immutable nature of the "Friends of Sheila for Delegate" bank account forecloses (or at very least, severely undermines) any attempted defense that Bynum-Coleman might advance that she still intended to spend those PPP funds (post-transfer) for the benefit of the recipient business, but merely planned to conduct such business-centric transactions in an unorthodox fashion from a different business (or personal) bank account.

Evidence pertaining to defendant Bynum-Coleman's May 29, 2020 transfer of PPP loan funds issued to and for the benefit of J.C. Bynum Construction LLC to her "Friends of Sheila for Delegate" bank account is thus directly and clearly relevant to establishing "a fact of consequence in determining" defendant Bynum-Coleman's guilt as to Count One, because such evidence demonstrates both how the defendant fraudulently *obtained* PPP funds, and how she *misused* those funds on personal expenses. Fed. R. Evid. 401.

### 2. *The Evidence is Relevant to Establishing the Falsity of the Loan Application, as Charged in Count Two*

The defendants filed a PPP loan application with a financial institution on May 12, 2020, asserting that the relief funds sought were to support the continued operations of a specific business (J.C. Bynum Construction LLC, a business the defendants described as a construction business). S.I. at ¶¶ 26, 43 (Count Two). The defendants certified on the loan application that the relief funds they sought would only be utilized for certain permissible business-related expenses. The defendants' application was approved, and the defendants received a $62,500 disbursement of PPP

funds on May 22, 2020, routed by the financial institution to a business bank account maintained by the defendants. S.I. ¶ 26.

Approximately a week later, on May 29, the defendant transferred $10,000 of that PPP loan for JC Bynum Construction to the bank account of her political campaign. The timing, fact, and *recipient* of the defendant's transfer of those PPP funds are evidence that "tends to make the existence of a fact of consequence to an issue in the case 'more probable or less probable'"—in this case, this evidence helps to establish both (1) defendant Bynum-Coleman's personal involvement in both the bank and wire fraud conspiracy charged in Count One (as noted above) and the PPP loan application scheme alleged in Count Two, and (2) that the certifications provided by the defendants on the J.C. Bynum Construction LLC loan application were knowingly false at the time that they were made, less than three weeks prior.

The fact that the defendants then filed a PPP loan forgiveness application for the same loan in January of 2021 and certified (after having transferred $10,000 of PPP funds to the campaign bank account) that the loan proceeds had been properly applied to PPP-allowable expenses further reinforces the relevance of this evidence.

   3. ***The Evidence is Relevant as Attribution Evidence of Defendant Sheila Bynum-Coleman's Role in the Bank and Wire Fraud Conspiracy (Count One) and False Loan Application Scheme (Count Two)***

The evidence in question also establishes defendant Bynum-Coleman's direct and personal involvement in the bank and wire fraud conspiracy and the defendants' false loan application scheme—both in their execution, and in the receipt and enjoyment of those schemes' (fraudulently obtained) proceeds. Many of the joint bank accounts, including the bank account into which the PPP loan proceeds for J.C. Bynum Construction LLC were deposited, were joint accounts among the defendants. The United States bears the burden of proving the individual criminal liability of

7

*both* defendants. One of the ways the United States will prove the defendants' individual culpability is through the attribution of spending of proceeds of the PPP fraud to expenses that are unique to each of the individual defendants. This financial tracing will demonstrate that each of the two defendants had an active hand in their (jointly pursued) fraud. The evidence the defendant objects to (defendant Bynum-Coleman's transfer of PPP loan funds to her political campaign) is an expense that is uniquely attributable to defendant Bynum-Coleman, and necessary to show Bynum-Coleman's specific wrongdoing independent from that of defendant Rashad Coleman. The United States must be prepared and permitted to rebut defendant Bynum-Coleman's likely defense (or at least argument) that she played no role in the fraud scheme—and Bynum-Coleman cannot, as her motion seeks, have it both ways—asserting a lack of involvement (or minimal involvement) with certain fraudulent loans and transactions, and simultaneously binding the government's hands from showing how she made personal use of a portion of the spoils barely a week after their receipt.

### B. The Evidence Is Not Unfairly Prejudicial

Defendant Bynum-Coleman's gambit to exclude evidence of her guilt from the jury's consideration on the grounds of unfair prejudice (pursuant to Fed. R. Evidence 403) necessarily fails. As demonstrated above, the evidence in question is highly probative of the charged offenses and admissible against the defendant. It is also not *unfairly* prejudicial. Where evidence against a defendant is relevant, the Fourth Circuit has "found the admission of [even] gruesome and shocking [evidence, *i.e.*,] photographs not to be unfairly prejudicial." *United States v. Bullis*, 139 F.3d at 893 (4th Cir. 1998) (table opinion) (collecting cases). Evidence that is damaging to a defendant's case is not, for that reason alone, unfairly prejudicial; "[i]ndeed, evidence that is highly probative invariably will be prejudicial to the defense." *Id.* (brackets and internal quotation marks omitted). Where, as here, the challenged evidence provides concrete proof of defendant Bynum-

Coleman's guilt, that evidence is not unfairly prejudicial, let alone so unfairly prejudicial that it should be excluded despite its high probative value. *See* Fed. R. Evid. 403 (authorizing the exclusion of relevant evidence only "if its probative value is substantially outweighed by a danger" of, *inter alia*, unfair prejudice).

Further, exclusion, rather than inclusion, of this highly probative evidence is likely to mislead the fact-finders. The jury is entitled to know the full story of defendant Bynum-Coleman's participation in and execution of a bank and wire fraud scheme designed to unjustly enrich herself through the fraudulent receipt of pandemic relief benefits for the purpose of spending those relief funds on impermissible personal purposes. "[B]eyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be." *Old Chief*, 519 U.S. 172 at 188. Put another way, the government must be able to tell the story of how Bynum-Coleman chose to use the fraud proceeds. The challenged evidence is as essential to the story of the case as it is to the elements of the charged offenses. It poses no risk of unfair prejudice, let alone any risk that substantially outweighs its high probative value.

The defendant also asserts in conclusory fashion that evidence of defendant Bynum-Coleman's transfer of PPP funds to her political campaign would confuse or mislead the jury, insinuating that an Eastern District of Virginia jury would be unable to fairly consider the evidence because of the defendant's race and gender. Def. Motion at 4. The defendant has the opportunity, during *voir dire*, to screen potential jurors for any improper biases; and the Court will instruct the jury as to the precise charges against the defendant, the elements of each, and the jurors' obligation

to apply the facts to the law.[1] "A jury is presumed to follow its instructions," and the defendant provides nothing other than incendiary invective to suggest that the jury selected in this trial will be unable to do so. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

**Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court deny defendant Bynum-Coleman's motion to exclude evidence of Bynum-Coleman's transfer of PPP business relief funds to the bank account of a wholly unrelated entity, Bynum-Coleman's political campaign. Such evidence is directly relevant to elements of the charged offenses and is thus prejudicial only in the sense of suggesting that the defendant is guilty of the charged conduct.

Respectfully submitted,

LINDSEY HALLIGAN
UNITED STATES ATTORNEY

By:    /s/
Avi Panth
Virginia Bar No. 92450
Thomas A. Garnett
Virginia Bar No. 86054
Assistant United States Attorneys
United States Attorney's Office
919 East Main St., Suite 1900
Richmond, VA 23219
Phone: (804) 819-5400
Fax: (804) 819-7417
Email: Avishek.Panth@usdoj.gov

---

[1] This legal prophylactic likewise moots the defendant's claim that the evidence in question "suggests misconduct outside the scope of the Indictment." Def. Motion at 4. Regardless, the United States assures the defendant that—consistent with the nature and scope of the allegations contained in the Superseding Indictment—the government will not introduce any testimony, evidence, or argument that the defendant's conduct independently constituted campaign finance violations or public corruption.