**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA,**

**v.**          **Criminal Case No. 3:25-cr-44-1**

**SHEILA C. BYNUM-COLEMAN,**

     **Defendant.**

## MEMORANDUM ORDER

This matter comes before the Court on Defendant Sheila C. Bynum-Coleman's Motion *in Limine* (the "Motion"). (ECF No. 60.) In the Motion, Ms. Bynum-Coleman asks the Court to exclude from trial "any and all evidence, testimony, argument, or reference by the Government concerning [Ms. Bynum-Coleman's] political campaign and/or candidacy for the Virginia House of Delegates, her political campaign committee . . . , or the alleged $10,000.00 transfer of [Paycheck Protection Program] loan proceeds to that committee's bank account." (ECF No. 60, at 1.)

Ms. Bynum-Coleman filed the Motion, (ECF No. 60), and the United States responded, (ECF No. 63). This matter is ripe for disposition. For the reasons articulated below, the Court DENIES the Motion.

### I.  Factual Background

On July 22, 2025, a Grand Jury for the Eastern District of Virginia returned a thirteen-count Superseding Indictment against Ms. Bynum Coleman and her co-Defendant, Rashad H. Coleman. (ECF No. 40.) Relevant to the Motion, the Superseding Indictment charges that Ms. Bynum-Coleman was part of a conspiracy to obtain loans from the Paycheck Protection Program ("PPP") and unemployment compensation from the Virginia Employment Commission ("VEC")

by submitting false statements in loan and unemployment applications. The Superseding Indictment further notes that during the course of the allegedly fraudulent scheme, Ms. Bynum-Coleman "was also a candidate for the Virginia House of Delegates." (ECF No. 40 ¶ 1.)

In Count One, the Superseding Indictment charges that the purpose of the conspiracy was for Ms. Bynum-Coleman and her co-Defendant "to unjustly enrich themselves" through the proceeds of the PPP loans and unemployment compensation. (ECF No. 40 ¶ 22.) According to the Superseding Indictment, as part of the conspiracy, Ms. Bynum-Coleman "submitted false and misleading PPP loan applications to financial institutions," which included a "[f]alse[] certif[ication] that the information submitted on the loan application[s] and the information provided in all supporting documents was true and accurate." (ECF No. 40 ¶ 24.) Upon receiving the proceeds from these applications, Ms. Bynum-Coleman "transferred $10,000 of the[] fraudulently obtained PPP funds to an Atlantic Union Bank account . . . in the name of 'Friends of Sheila for Delegate,' an account for [Ms. Bynum-Coleman's] political campaign for the Virginia House of Delegates." (ECF No. 40 ¶ 40.)

In Counts Two through Ten, the Superseding Indictment likewise charges Ms. Bynum-Coleman with making false statements on loan applications, including "false[] represent[ations] that the information submitted on the loan application[s] (including supporting documents) w[ere] true and accurate." (ECF No. 40 ¶¶ 42–43.)

## II. Standard of Review

Federal Rule of Evidence 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402.

Even relevant evidence may not be admissible, however, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Similarly, even if relevant, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But this evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

## III. Analysis

### A. Evidence of Ms. Bynum-Coleman's Transfer of Funds to an Account Affiliated with her Political Campaign is Relevant

Ms. Bynum-Coleman argues that evidence of the transfer of funds into an account associated with her political candidacy is irrelevant because "[n]one of the charged offenses in the . . . [S]uperseding [I]ndictment require proof that loan proceeds were used to support a political campaign." (ECF No. 60, at 3.) But as the United States correctly argues, the transfer of these funds is relevant to both the purposes of the conspiracy charged in Count One and the falsity of the loan applications charged in Counts Two through Ten. (ECF No. 63, at 4.) According to the United States, when Ms. Bynum-Coleman applied for PPP loans, she "agree[d] . . . that [she] would utilize th[e] sought-after PPP funds only for narrowly defined permissible purposes." (ECF No. 63, at 5.) As a result, Ms. Bynum-Coleman's transfer of those funds to an account associated with her political activity is "circumstantial evidence of [her] mental state and her knowledge of the falsity of [her] loan application certifications." (ECF No. 63, at 5.) That circumstantial evidence is relevant to both the conspiracy charged in Count One and the false statements charged in Counts Two through Ten.

3

**B.      Evidence of Ms. Bynum-Coleman's Transfer of Funds to an Account
Affiliated with her Political Campaign Is Not Unfairly Prejudicial**

Even if the transfer of funds were relevant, Ms. Bynum-Coleman argues that admitting

this evidence would be unfairly prejudicial under Rule 403.  According to Ms. Bynum-Coleman,

portraying her, "a Black female candidate in a diverse district[,] as siphoning pandemic relief for

political ambition risks visceral juror outrage, evoking stereotypes of corruption and

racial/gender bias."  (ECF No. 60, at 4.)  The Court finds that even if this evidence were

prejudicial, it is not *unfairly* so.  As discussed above, evidence of the transfer of funds to Ms.

Bynum-Coleman's bank account bears directly on proof of Counts One through Ten.

The Court acknowledges, however, that Ms. Bynum-Coleman seeks exclusion of "*any

and all* evidence" of her political campaign.  (ECF No. 60, at 1 (emphasis added).)  But the

United States' briefing focuses solely on its intention to introduce evidence of Ms. Bynum-

Coleman's transfer of PPP funds to her campaign bank account.  Because the United States does

not argue that *other* evidence related to Ms. Bynum-Coleman's political campaign would be

relevant or non-prejudicial, the Court limits its finding here to the evidence presently at issue:

Ms. Bynum-Coleman's transfer of the PPP funds.  That is, the probative value of evidence of

Ms. Bynum-Coleman's transfer of PPP loan proceeds to the bank account associated with her

political activity is not substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid.

403.  Anchoring the Court's decision is the underlying principle that any of Ms. Bynum-

Coleman's concerns regarding the presentation of this evidence or the bias of jurors can be

addressed via screening during voir dire, instructions regarding the jury's duty to apply the facts

it finds to the law as instructed to it, and, if appropriate, a limiting instruction regarding how the

jury can consider the evidence before it.

4

**C.    Evidence of Ms. Bynum-Coleman's Transfer of Funds to an Account Affiliated with her Political Campaign Is Not Improper Character Evidence**

Finally, Ms. Bynum-Coleman argues that even if evidence of the transfer of funds to the bank account is not barred by Rules 401 through 403, this evidence "suggests misconduct outside the scope of the [Superseding] Indictment" in violation of Rule 404. (ECF No. 60, at 4.) This evidence "risks implying that [Ms. Bynum-Coleman is] generally untrustworthy or abuse[s] public positions of trust, which is impermissible propensity reasoning." (ECF No. 60, at 4.) In response, the United States assures the Court that it "will not introduce any testimony, evidence, or argument that the defendant's conduct independently constituted campaign finance violations or public corruption." (ECF No. 63, at 10 n.1.) The United States adds that evidence of the transfer of these funds could establish "the explicitly alleged *purposes* of the . . . conspiracy." (ECF No. 63, at 4 (emphasis in original).) The Federal Rules of Evidence permit the introduction of evidence of prior acts in order to prove a *motive, intent, or plan* without violating the prohibition on propensity evidence. Fed. R. Evid. 404(b)(2). Neither party, however, has identified any specific evidence that might come forward other than that of the transfer of funds, so the Court cannot make a final determination on the record before it with respect to any other evidence. The Court reserves ruling on the introduction of any other evidence related to Ms. Bynum-Coleman's political activity, particularly given the United States' assurance that it does not intend to introduce any other such evidence. The Court will address any dispute as to additional evidence regarding Ms. Bynum-Coleman's political activity if or when it arises.

## IV.  Conclusion

The evidence the United States seeks to introduce violates neither Rules 401, 403, nor 404. The Court therefore DENIES the Motion. The United States may introduce evidence of Ms. Bynum-Coleman's transfer of funds to a bank account associated with her political activity.

The Court reserves ruling on the introduction of any other evidence related to Ms. Bynum-

Coleman's political activity

It is SO ORDERED.

Date: 2/3/26
Richmond, Virginia

/s/

M. Hannah Lauck
Chief United States District Judge