IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA

v.

SHEILA C. BYNUM-COLEMAN,

Defendant.

No. 3:25-cr-44

## STATEMENT OF FACTS

The United States and the defendant, Sheila C. Bynum-Coleman (also known as "Sheila C. Coleman" and hereafter, "Bynum-Coleman"), agree that the facts set forth in the Superseding Indictment and below are true and accurate, and stipulate that had this matter gone to trial, the United States would have proven them beyond a reasonable doubt through admissible and credible evidence.

## INTRODUCTORY ALLEGATIONS

1.      Bynum-Coleman and Rashad H. Coleman (hereafter, "Coleman," and together with Bynum-Coleman, "defendants"), were a married couple residing in Chesterfield County, within the Eastern District of Virginia. Bynum-Coleman was also a candidate for the Virginia House of Delegates.

2.      Atlantic Union Bank and Virginia National Bank were "financial institutions" for purposes of 18 U.S.C. §§ 20, 1344, and 1957. Atlantic Union Bank and Virginia National Bank were also each an institution the accounts of which were insured by the Federal Deposit Insurance Corporation.

3.      J.C. Bynum Construction LLC was a limited liability company formed in the Commonwealth of Virginia on or about October 13, 2010. From the company's inception through

1

on or about September 30, 2020, Bynum-Coleman was listed as the registered agent for the business; thereafter, from September 30, 2020 through October 30, 2023, Coleman was listed as the registered agent of the business. At all times, the registered address for the business was within the Eastern District of Virginia.

4.      Medina House of Fashion LLC was a limited liability company formed in the Commonwealth of Virginia on or about November 16, 2020 and cancelled on or about December 7, 2021. Coleman was listed as the registered agent for the business. At all times, the registered address for the business was within the Eastern District of Virginia.

5.      R.H. Coleman Enterprises LLC was a limited liability company formed in the Commonwealth of Virginia on or about February 20, 2015. On or about July 18, 2018, Bynum-Coleman submitted a representation to the Chesterfield County Commissioner of Revenue, stating that the company's last day of business was December 31, 2017. The company's business licensure in Chesterfield County, Virginia thereafter ended on or about January 5, 2018. Thereafter, on or about May 31, 2018, the company was listed as inactive with the Virginia State Corporation Commission. On or about May 28, 2020, the defendants filed an application for reinstatement of the company with the Virginia State Corporation Commission. Bynum-Coleman was listed as the registered agent for the business until on or about August 25, 2021; thereafter, Coleman was listed as the registered agent of the business. At all times, the registered address for the business was within the Eastern District of Virginia.

6.      Coleman REO Services LLC was a limited liability company formed in the Commonwealth of Virginia on or about October 25, 2017. On or about January 21, 2020, Bynum-Coleman submitted a representation to the Chesterfield County Commissioner of Revenue, stating that the company's last day of business was February 28, 2018. On or about January 18, 2022, the defendants cancelled the business with the Virginia State Corporation Commission. Coleman was

2

listed with the Virginia State Corporation Commission as the registered agent for the business. At all times, the registered address for the business was within the Eastern District of Virginia.

7.     Coleman Property Management LLC was a limited liability company formed in the Commonwealth of Virginia on or about September 16, 2021, and cancelled on or about January 18, 2022. Coleman was listed as the registered agent for the business. At all times, the registered address for the business was within the Eastern District of Virginia.

8.     Moda Noir LLC was a limited liability company formed in the Commonwealth of Virginia on or about May 19, 2021, and cancelled on or about January 18, 2022. Coleman was listed as the registered agent for the business. At all times, the registered address for the business was within the Eastern District of Virginia.

### *Virginia Unemployment Insurance Program*

9.     Unemployment insurance ("UI") is a joint state-federal program intended to provide temporary financial assistance to certain unemployed workers.

10.    Following the emergence of the coronavirus pandemic ("COVID-19"), the United States Government took steps to slow the spread of the virus and to mitigate its impact on the public's health and economic wellbeing. On March 13, 2020, the President declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"). On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") became law.

11.    The CARES Act created the Pandemic Unemployment Assistance ("PUA") and the Federal Pandemic Unemployment Compensation ("FPUC") programs, which provided further benefits to certain unemployed claimants.

12.    As of April 18, 2020, the President declared that a major disaster existed in all States and territories under Section 401 of the Stafford Act. On August 8, 2020, to further offset

3

the pandemic's impact on American workers, the President authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Fund for lost wage payments. The President authorized the FEMA Administrator to provide grants to participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA"), which provided further benefits to certain unemployed claimants.

13.     The PUA, FPUC, and LWA programs are administered by the various states, including the Commonwealth of Virginia, though the programs' benefits are funded in part by the federal government. The Commonwealth of Virginia managed unemployment insurance compensation programs (*i.e.,* individually, UI, PUA, FPUC, and LWA, and collectively, "UIC") through the Virginia Employment Commission ("VEC").

14.     To be eligible for Virginia UIC benefits, claimants must have had their hours reduced by their employer or been separated from employment altogether. Once the VEC approved a claim, the claimant needed to re-certify unemployment status on a weekly basis; then, the claimant could receive UIC funds disbursed weekly. Specifically, claimants needed to certify that they were ready, willing, and able to work each day during the weeks they claimed UIC benefits.

### *The Paycheck Protection Program*

15.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disaster.

16.     Another source of relief provided by the CARES Act in response to the COVID19 pandemic was the authorization of billions of dollars in forgivable loans to small businesses for

4

job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP").

17.    To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business.  To obtain a PPP loan, the applicant was required to acknowledge the program rules, make certain certifications under penalty of perjury, and provide certain supporting documentation as part of the loan application.

18.    A PPP loan application had to be processed by a participating financial lender or payment processor. If the PPP loan application was approved, the lender or payment processor funded the PPP loan using its own monies, and such loans were guaranteed by the SBA. Data from the application was transmitted by the financial lender or payment processor to the SBA while processing the loan.

19.    PPP loan proceeds could only be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The proceeds of a PPP loan were not permitted to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

A.  *Defendants Submitted False Statements on PPP Applications.*

20.    Bynum-Coleman submitted false and misleading PPP loan applications to financial institutions. On each of these applications, Bynum-Coleman made knowingly false statements and knowingly false certifications to mislead the financial institutions, including, but not limited to, the following misrepresentations:

    a.    Providing false and fabricated income, sales, gross receipts, and profit figures for the businesses;

    b.    Falsely certifying that the businesses were in operation as of February 15, 2020; and

c.      Falsely certifying that the information submitted on the loan application and the information provided in all supporting documents was true and accurate.

21.     At least nine fraudulent PPP loan applications submitted by Bynum-Coleman were approved and funded, resulting in the disbursal of at least $225,000 in proceeds by the financial institutions.

22.     As an illustrative example, on or about May 12, 2020, Bynum-Coleman filed a PPP loan application with Virginia National Bank in the name of J.C. Bynum Construction LLC, a business the defendants represented to be a construction business. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2019 IRS Form 1040 Schedule C in the name of Coleman purporting to show that J.C. Bynum Construction LLC had $366,101 in gross income and $305,121 in net profit in 2019, attaching the fabricated Schedule C to the loan application. In truth, as Bynum-Coleman well knew, neither Bynum-Coleman nor Coleman filed this 2019 IRS Form 1040 Schedule C with the IRS. In actuality, the Bynum-Coleman and Coleman filed a separate 2019 IRS Form 1040 Schedule C with the IRS for J.C. Bynum Construction LLC, representing that the business received $236,101 in both gross income and gross profit; this legitimate 2019 IRS Form 1040 Schedule C further represented that the business incurred $237,133 in total expenses, resulting in an overall tentative loss in the business of $1,032. The false PPP loan application caused a $62,500 loan disbursement, on or about May 22, 2020, to an Atlantic Union Bank account ending in -1246, an account controlled by Bynum-Coleman and Coleman.

23.     As another illustrative example, on or about May 28, 2020, Bynum-Coleman filed an application for reinstatement for "R.H. Coleman Enterprises LLC" with the Virginia State Corporation Commission. Thereafter, on or about February 22, 2021, Bynum-Coleman filed a PPP loan application with Atlantic Union Bank in the name of "RH Coleman Enterprises LLC," which

6

Bynum-Coleman purported was a business engaged in real estate investment and consulting. The application contained the false statements that the company had $100,000 in annual sales/revenue and had been in operation as of February 15, 2020. Bynum-Coleman further represented that the applicant (or owner of the applicant business) was not an owner of any other business and did not have common management with any other business. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that RH Coleman Enterprises LLC received $104,274 in gross receipts and $104,274 in net profits. In truth and in fact, as Bynum-Coleman well knew, neither Bynum-Coleman nor Coleman filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $20,835 loan disbursement, on or about March 22, 2021, to an Atlantic Union Bank account ending in -8743. Bynum-Coleman and Coleman were the signatories on this bank account.

24.    As another illustrative example, on or about November 16, 2020, Bynum-Coleman submitted articles of organization for a company named "Medina House of Fashion LLC" with the Commonwealth of Virginia's State Corporation Commission. Thereafter, on or about April 13, 2021, Bynum-Coleman filed a PPP loan application with Atlantic Union Bank in the name of "Medina House of Fashion," which Bynum-Coleman purported was a service business. The application contained a false statement that the company had $89,950 in annual sales/revenue and that the business had been in operation as of February 15, 2020. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that Medina House of Fashion received $99,860 in gross receipts or sales. In truth and in fact, as Bynum-Coleman well knew, neither Bynum-Coleman nor Coleman filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $18,740 loan disbursement, on or about May 14, 2021, to an Atlantic

7

Union Bank account ending in -6740. Bynum-Coleman and Coleman were the signatories on this bank account. On or about January 18, 2022, Bynum-Coleman filed articles of cancellation with the Virginia State Corporation Commission to close Medina House of Fashion LLC.

25.    As another illustrative example, on or about January 19, 2021, Bynum-Coleman reserved the "Sheila Coleman – Realtor" corporate name with the Virginia State Corporation Commission (effective until May 19, 2021). Thereafter, on or about February 22, 2021, Bynum-Coleman filed a PPP loan application with Atlantic Union Bank in the name of "Sheila Coleman – Realtor." The application contained a false statement that the company had $100,000 in annual sales/revenue and that the business had been in operation as of February 15, 2020. Bynum-Coleman further represented that the applicant (or owner of the applicant business) was not an owner of any other business and did not have common management with any other business. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2020 IRS Form 1040 purporting to show that Bynum-Coleman had earned $120,200 in taxable income that year. Additionally, Bynum-Coleman prepared and submitted a falsified 2019 IRS Form 1040 Schedule C purporting to show that Bynum-Coleman's realtor business received $111,000 in gross receipts or sales in the 2019 tax year. In truth and in fact, as Bynum-Coleman well knew, both documents were forged and neither document was filed with the IRS. This false PPP loan application caused a $20,835 loan disbursement, on or about March 4, 2021, to an Atlantic Union Bank account ending in -7947. Bynum-Coleman, Coleman, and their minor-aged child were the signatories on this bank account. Bynum-Coleman never ultimately registered "Sheila Coleman – Realtor" with the Virginia State Corporation Commission as a corporate entity.

26.    As another illustrative example, on or about January 19, 2021, Bynum-Coleman reserved the "Coleman Property Management" corporate name with the Virginia State

8

Corporation Commission (effective until May 19, 2021). Thereafter, on or about March 16, 2021, Bynum-Coleman filed a PPP loan application in the name of "Coleman Property Management," which Bynum-Coleman purported was a business engaged in real estate management, with Atlantic Union Bank. The application contained a false statement that the company had $106,000 in annual sales/revenue and that the business had been in operation as of February 15, 2020. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that Coleman Property Management received $152,315 in gross receipts and $40,529 in net profits. In truth and in fact, as Bynum-Coleman well knew, neither Bynum-Coleman nor Coleman filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $20,832 loan disbursement, on or about March 29, 2021, to an Atlantic Union Bank account ending in -5943. Bynum-Coleman and Coleman were the sole signatories on this bank account. Bynum-Coleman filed articles of incorporation and articles of cancellation for Coleman Property Management LLC with the Virginia State Corporation Commission on September 16, 2021, and January 18, 2022, respectively.

27.     As another illustrative example, on or about January 19, 2021, the Bynum-Coleman reserved the "Moda Noir LLC" corporate name with the Virginia State Corporation Commission (effective until May 19, 2021). Thereafter, on or about April 27, 2021, Bynum-Coleman filed a PPP loan application with Atlantic Union Bank in the name of "Moda Noir," which Bynum-Coleman purported was a consulting and clothing business. The application contained a false statement that the company had $89,950 in annual sales/revenue and that the business had been in operation as of February 15, 2020. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that Moda Noir received $89,950 in gross receipts or sales. In truth and in fact,

9

as Bynum-Coleman well knew, neither Bynum-Coleman nor Coleman filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $18,737 loan disbursement, on or about May 6, 2021, to an Atlantic Union Bank account ending in -0849. Bynum-Coleman and Coleman were the sole signatories on this bank account. Bynum-Coleman filed articles of incorporation and articles of cancellation for Moda Noir with the Virginia State Corporation Commission on May 19, 2021, and January 18, 2022, respectively.

28.     As another illustrative example, on or about February 22, 2021, Bynum-Coleman filed a PPP loan application with Atlantic Union Bank in the name of "Rashad Coleman-Handy Man Services," which defendants purported was a repair and maintenance company. The application contained a false statement that the company had $100,000 in annual sales/revenue and that the business had been in operation as of February 15, 2020. Bynum-Coleman further represented that the applicant (or owner of the applicant business) was not an owner of any other business and did not have common management with any other business. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2019 IRS Form 1040 Schedule C purporting to show that Rashad Coleman-Handy Man Services had $106,000 in net profit and $150,000 in gross receipts or sales. In truth and in fact, as Bynum-Coleman well knew, neither Bynum-Coleman nor Coleman filed this 2019 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $21,250 loan disbursement, on or about March 18, 2021, to an Atlantic Union Bank account ending in -7947. Bynum-Coleman, Coleman, and their minor-aged child were signatories on this bank account.

29.     As another illustrative example, on or about March 8, 2021, Bynum-Coleman submitted an application to reinstate the existence of Coleman REO Services LLC with the Commonwealth of Virginia State Corporation Commission. Less than a month later, on or about April 4, 2021, Bynum-Coleman filed a PPP loan application with Atlantic Union Bank in the

10

name of "Coleman REO Services," which Bynum-Coleman purported was a business engaged in waste collection. The application contained a false statement that the company had $96,725 in annual sales/revenue and that the business had been in operation as of February 15, 2020. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2020 IRS Form 1040 Schedule C purporting to show that Coleman REO Services received $96,725 in gross receipts or sales. In truth and in fact, as Bynum-Coleman well knew, neither Bynum-Coleman nor Coleman filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $20,832 loan disbursement, on or about May 4, 2021, to an Atlantic Union Bank account ending in -9448. Bynum-Coleman and Coleman were the sole signatories on this bank account. On or about January 18, 2022, the defendants filed articles of cancellation with the Virginia State Corporation Commission to close Coleman REO Services.

30.    As another illustrative example, on or about March 18, 2021, Bynum-Coleman filed a second draw PPP loan application with Atlantic Union Bank in the name of J.C. Bynum Construction LLC. The application contained a false statement that the company had $153,420 in 2020 annual gross receipts. As supporting documentation to substantiate the PPP loan application, Bynum-Coleman prepared and submitted a falsified 2020 IRS Form 1040 Schedule C in the name of Coleman purporting to show that J.C. Bynum Construction LLC had $153,420 in 2020 gross receipts or sales, attaching the fabricated Schedule C to the loan application. In truth, as Bynum-Coleman well knew, neither Bynum-Coleman nor Coleman filed this 2020 IRS Form 1040 Schedule C with the IRS. This false PPP loan application caused a $20,832 loan disbursement, on or about March 18, 2021, to an Atlantic Union Bank account ending in -5780.

11

B. *Defendants Submitted False Statements on Pandemic Unemployment Assistance Certifications*

31.    On or about March 29, 2020, Bynum-Coleman filed for UI benefits with the VEC. On her UI application, Bynum-Coleman represented, among other things, that she: (1) last worked on March 16, 2020 but was laid off; (2) was not currently working part-time for another employer; (3) had not established a business by forming an LLC or registering a business with the Virginia State Corporation Commission; and (4) that the information provided was true to the best of her knowledge.

32.    Thereafter, on or about April 20, 2020, Bynum-Coleman filed an initial application for PUA benefits with the VEC. On the application, Bynum-Coleman represented, among other things, that she: (1) was an unemployed worker; (2) had her place of employment closed because of COVID-19; and (3) all information given on the application was true and correct. Thereafter, Bynum-Coleman filed multiple recertifications for continued eligibility for PUA, representing that she was eligible for unemployment benefits from on or about March 15, 2020 through on or about February 13, 2021. In each such recertification, Bynum-Coleman certified that in the preceding week, she did not apply for or receive Paycheck Protection Program funds. As a result of such representations, Bynum-Coleman received at least $17,562 in UIC funds. Such recertifications contained false representations because, as Bynum-Coleman well knew, she had applied for and/or received PPP funds for certain weeks covered by the PUA recertifications: For instance, on or about May 17, 2020, Bynum-Coleman filed a recertification for PUA benefits, certifying that in the week ending on May 16, 2020, she had not applied for PPP funds. Yet, on or about May 12, 2020, Bynum-Coleman had applied for PPP funds for J.C. Bynum Construction LLC.

## C. *Defendants Spent Fraudulently Obtained PPP Funds on Personal Expenses*

33.    In furtherance of this conspiracy, Bynum-Coleman routinely spent fraudulently obtained PPP funds on: (1) paying down their own home loan; (2) luxury clothing; (3) paying down credit card bills; and (4) other personal spending.

34.    On or about May 29, 2020, roughly one week after the defendants received $62,500 in fraudulently obtained PPP loans for J.C. Bynum Construction LLC, Bynum-Coleman transferred $10,000 of these fraudulently obtained PPP funds to an Atlantic Union Bank account ending in -3144 in the name of "Friends of Sheila for Delegate," an account for Bynum-Coleman's political campaign for the Virginia House of Delegates.

### *Other Conduct*

35.    In addition to the conduct detailed in Paragraphs 20-36 and although not contained within Superseding Indictment, Defendant sought and obtained loans from the Small Business Administration employing the Covid-19 Emergency Injury Disaster Loan program and in so doing made false and misleading statements pursuant to 18 U.S.C. 1001 to procure such loan assistance.

36.    In addition to the conduct detailed in Paragraphs 20-35 and although not contained within Superseding Indictment, Defendant engaged or sought to engage in certain activity in 2024 that may constitute mortgage fraud under 18 U.S.C. 1014.

### *Count 2 Statutory Language*

37.    On or about the dates indicated in the table below, in the Eastern District of Virginia and elsewhere, the defendant Sheila C. Bynum-Coleman, for the purpose of influencing the action of financial institutions, in connection with applications for PPP loans, knowingly made false statements and reports as further described below:

13

| Count | On or About Date | Description of False Statements |
|-------|------------------|-------------------------------|
| 2 | May 12, 2020 | First Draw PPP loan application to Virginia National Bank for J.C. Bynum Construction LLC: (1) falsely representing that the information submitted on the loan application (including supporting documents) was true and accurate; and (2) transmitting a fabricated and false 2019 IRS Form 1040 Schedule C as supporting justification. |

## *Count 12 Statutory Language*

38. During the calendar year 2020, Sheila C. Bynum-Coleman, defendant herein, who was a resident of Chesterfield County, within the Eastern District of Virginia, had and received gross income of at least $24,800. By reason of such gross income, Bynum-Coleman was required by law, following the close of the calendar year 2020 and on or before May 17, 2021, to make an income tax return to the Internal Revenue Service, stating specifically the items of her gross income and any deductions and credits to which she was entitled. Well knowing and believing the foregoing, Bynum-Coleman did willfully fail to timely make an income tax return.

\* \* \*

39. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding defendant's case.

14

40.    The actions of defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Todd W. Blanche
Deputy Attorney General

By: _____
Avi Panth
Thomas A. Garnett
Assistant United States Attorneys

15

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Sheila C. Bynum-Coleman, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Sheila C. Bynum-Coleman

I am the attorney for the defendant. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: __2|5|2026_____        _____
                                 S. Sadiq Gill
                                 Counsel for the Defendant

16